## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| DAVID TILTON, ROB PENWELL, ) <br> JIM JENSEN, ROD RATCLIFF, JOHN ) <br> VERFURTH, PAMELA DUNCAN, DENNIS ) <br> TOLLISON, PAT MORAN, JOSH FARRO, ) <br> TERRY AND RONDA CLARK, MARIA CROW ) <br> (ORL FOUNDATION), MIKE RUHANA, ) <br> TIP TOLLISON, PATRICK  MCINERNEY, ) <br> RICHARD MCINERNEY, MANNY FRANCO ) <br> (KERSTEN ADAMS), JOHN BRONSON, ) <br> BRUCE BURNETT, JEFFREY C. DODSON, ) <br> JOE DRUMHELLER, SAM DRUMHELLER, ) <br> SUSAN DRUMHELLER, JAMES L. MARTIN ) <br> TRUST, JASON MARTIN, LUKE PELIKAN, ) <br> JOHN RATIGAN, ROB AND CATHY SPICER, ) <br> And JOSEF WOLLMAN, DDS, ) <br><br> *Plaintiffs*, ) <br><br> v. ) <br><br> JARETT J. ANDRETTI, ) <br> **Serve**: 107 Keats Rd ) <br> Mooresville, NC 28117-8769 ) <br><br> ANDRETTI MOTORSPORTS, LLC, ) <br> **Serve**: c/o Jarett Andretti (Reg. Agent) ) <br> 107 Keats Rd ) <br> Mooresville, NC 28117-8769 ) <br><br> *Defendants*. ) | **Civil Action No.:** _____ <br><br> **District Judge:**  _____ |

## __Complaint__

**COME NOW** Plaintiffs, David Tilton (TILTON), Rob Penwell (PENWELL), Jim

Jensen (JENSEN), Rod Ratcliff (RATCLIFF), John Verfurth (VERFURTH), Pamela Duncan

(DUNCAN), Dennis Tollison (D. TOLLISON), Pat Moran (MORAN), Josh Farro (FARRO),

Manny Franco—Kersten Adams (FRANCO), Terry and Ronda Clark (CLARKS), Maria Crow—

ORL Foundation (CROW), Mike Ruhana (RUHANA), Tip Tollison (T. TOLLISON), Patrick

McInerney (P. MCINERNEY), Richard McInerney (R. MCINERNEY), John Bronson

(BRONSON), Bruce Burnett (BURNETT), Jeffrey C. Dodson (DODSON), Joe Drumheller (J.

DRUMHELLER), Sam Drumheller (SAM DRUMHELLER), Susan Drumheller (SUSAN

DRUMHELLER), James L. Martin Trust (MARTIN TRUST), Jason Martin (MARTIN), Luke

Pelikan (PELIKAN), John Ratigan (RATIGAN), Rob and Cathy Spicer (SPICERS), and Josef

Wollman, DDS (WOLLMAN) (collectively "Plaintiffs"), by counsel, and state the following in

support of their complaint against Defendants Jarett Andretti (JARETT ANDRETTI), and

Andretti Motorsports (ANDRETTI MOTORSPORTS) (collectively, "Defendants"):

**Parties**

1.    Plaintiff TILTON is a resident of Virginia.

2.    Plaintiff PENWELL is a resident of Connecticut.

3.    Plaintiff JENSEN is a resident of Florida.

4.    Plaintiff RATCLIFF is a resident of Florida.

5.    Plaintiff VERFURTH is a resident of Florida.

6.    Plaintiff DUNCAN is a resident of Georgia.

7.    Plaintiff D. TOLLISON is a resident of Georgia.

8.    Plaintiff MORAN is a resident of Ohio.

9.    Plaintiff FARRO is a resident of Tennessee.

10.    Plaintiff FRANCO is a resident of Texas.

11.    Plaintiffs CLARKS are residents of Indiana.

12.    Plaintiff CROW is a resident of Indiana.

13.    Plaintiff RUHANA is a resident of Indiana.

14.     Plaintiff T. TOLLISON is a resident of Indiana.

15.     Plaintiff P. MCINERNEY is a resident of New York.

16.     Plaintiff R. MCINERNEY is a resident of New York.

17.     Plaintiff BRONSON is a resident of Virginia.

18.     Plaintiff BURNETT is a resident of Virginia.

19.     Plaintiff DODSON is a resident of Virginia.

20.     Plaintiff J. DRUMHELLER is a resident of Virginia.

21.     Plaintiff SAM DRUMHELLER is a resident of Virginia.

22.     Plaintiff SUSAN DRUMHELLER is a resident of Virginia.

23.     Plaintiff MARTIN TRUST is a resident of Virginia.

24.     Plaintiff MARTIN is a resident of Virginia.

25.     Plaintiff PELIKAN is a resident of Virginia.

26.     Plaintiff RATIGAN is a resident of Virginia.

27.     Plaintiffs SPICERS are residents of Virginia.

28.     Plaintiff WOLLMAN is a resident of Virginia.

29.     The Plaintiffs represent people who have done business with the Defendants as described herein.

30.     Defendant JARETT ANDRETTI is a resident of North Carolina.

31.     Defendant ANDRETTI MOTORSPORTS is a limited liability company whose principal place of business is located in Mooresville, North Carolina.  The sole member of ANDRETTI MOTORSPORTS is Defendant ANDRETTI.

## Jurisdiction and Venue

32.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the

3

parties are completely diverse and the amount in controversy exceeds $75,000.00.

33.    This Court has personal jurisdiction over Defendants as they have transacted business in the Commonwealth of Virginia, both through the solicitation of loans and by meeting with the individual lenders identified herein.

34.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as the events or omission giving rise to the claims occurred in the Commonwealth of Virginia.

## Statement of Facts

### Gallant is Introduced to David Tilton in 2020

35.    Plaintiff TILTON is a Northern Virginia businessman.  He has been a long-time acquaintance with the Andretti family of American racing fame.  He is informally connected to Defendant ANDRETTI MOTORSPORTS, and thus is well acquainted with Defendant JARETT ANDRETTI and his company ANDRETTI MOTORSPORTS.

36.    In January 2020, TILTON's co-worker, Angus Mackenzie, introduced TILTON to Scott Bithel to discuss a potential business proposition.  Notably, these meetings and conversations took place in Northern Virginia, including Loudoun County.

37.    Mr. Bithel, with his partners Chris and Jonathan Lightbody, was operating a British company named Gallant Air Conditioning Services, LTD[1] ("Gallant"), which was in the business of installing Korean-manufactured air conditioning (HVAC) systems to various commercial users in the United Kingdom (UK).

38.    When he was introduced to TILTON, Mr. Bithel stated that he was seeking lenders for Gallant, which required short-term capital in order to finance its HVAC inventory, which it then sold for a profit.

---

[1] The entity's name was changed thereafter on May 28, 2020, and it began operating under the name Gallant Building Services, LTD.

39.     Mr. Bithel claimed that Gallant had contracts with Travelodge to install air conditioning systems in its UK hotels.

40.     He also claimed that Gallant (i) had an exclusive contract with Samsung to provide their air conditioning systems in those UK Travelodge hotels and (ii) that Samsung had offered a 13.125% discount if it purchased the air conditioning systems up front.

41.     Mr. Bithel and his partners further represented that Gallant could not get a traditional loan because it had no collateral.  In that vein, Mr. Bithel stated Gallant had offices and people, but no assets, so it could not get a loan from a bank or other traditional lender. For that reason, Gallant sought private investors, particularly in the U.S. market.

42.     As an incentive, Mr. Bithel stated to TILTON that he would pass along Gallant's profit on the installation of the air conditioning systems to investors who loaned money to Gallant, i.e. so that they would enjoy a 13.125% return on the loan party.

### Due Diligence On Gallant

43.     Having received this presentation, TILTON performed certain acts of due diligence regarding the potential transaction.

44.     First, he verified with a party claiming to be Travelodge that the represented HVAC contracts existed.

45.     He further verified with a party claiming to be Samsung that Gallant had an exclusive purchase agreement for purposes of the installation.

46.     He also spoke with a British investor, provided by Gallant as a reference to show that it had previously paid a lucrative return on investment.

47.     In April 2020, having performed this level of due diligence and receiving

sufficient responses, TILTON agreed to lend Gallant $250,000 as an initial investment.   (That

investment eventually became a million dollars over time.)

### David Tilton Introduces Gallant to Andretti Motorsports

48.     TILTON was a friend of Defendant JARETT ANDRETTI's cousin, Michael

Andretti, as well as JARETT ANDRETTI.

49.     In the course of dealing with Gallant, TILTON discovered that Gallant had

sponsored a race team in the UK and, therefore, thought Gallant would make a good sponsor for

ANDRETTI MOTORSPORTS, which was seeking corporate partners.

50.     Shortly after he lent Gallant the funds in April of 2020, TILTON introduced

Gallant to JARETT ANDRETTI as well as Tyler Smith, the President of ANDRETTI

MOTORSPORTS, to facilitate a sponsorship arrangement.

51.     By May of 2020, Gallant had agreed to sponsor ANDRETTI MOTORSPORTS.

52.     As part of that agreement, Mr. Bithel asked JARETT ANDRETTI and Tyler

Smith, on behalf of ANDRETTI MOTOR SPORTS, to help secure additional lenders to support

the business of Gallant.

### Mr. Andretti and Mr. Smith Raise $17M in Funds for Gallant

53.     JARETT ANDRETTI and Tyler Smith know many high-net-worth individuals,

including the Plaintiffs in this case, through contacts in the racing world.

54.     Using these connections, they shared these contacts with Gallant and made

introductions so Gallant could attempt to secure additional lenders to finance their business

opportunity with Travelodge and Samsung. Again, many of these meetings took place in

Northern Virginia, where the lenders were located.   (A number of the meetings took place at

"DC Prime Restaurant" in One Loudoun shopping center in Loudoun County).

55.     From December 2020 until April 2024, JARETT ANDRETTI and Tyler Smith,

acting on behalf of ANDRETTI MOTORSPORTS, procured more than thirty (30+) new

individual lenders ("the American lenders") for Gallant in the United States, which included all

of the twenty-eight (28) listed Plaintiffs.[2]

56.     All told, the American lenders entered forty (40) separate loan agreements with

Gallant and, pursuant to same, lent approximately SEVENTEEN MILLION DOLLARS

($17,000,000) (USD) in total.  The bulk of these funds, i.e. at least $13.0 million, was paid in by

the Plaintiffs.  Each of these loan agreements carried an interest rate of 13.125% interest, which

was due to be paid monthly.

### Use Of First Merchants Account in Indiana

57.     Initially, Gallant's interest payments were made through its account with Barclays

Bank which then transferred funds directly to the American lenders' respective bank accounts.

Tyler Smith personally oversaw those payments for Gallant.

58.     At one point, Tyler Smith set up a domestic banking account for Gallant at First

Merchants Bank in Indiana ("The First Merchants Account").  He claimed this was due to the

costs for the international wiring fees for the transfers to each American lender.

59.     Thereafter, Tyler Smith would receive a single lump sum payment from Gallant,

through the Barclays Bank, and would distribute the funds to the individual American lenders

using the First Merchants Account.

---

[2]     This includes the initial lender: David Tilton.

60.    Unbeknownst to any of Gallant's lenders, Tyler Smith and JARETT ANDRETTI had also become "consultants" to Gallant and begun receiving "consulting fees" for these alleged services, in addition to the sponsorship.[3]

61.    This significant degree of financial support from Gallant put Smith, on behalf of ANDRETTI MOTORSPORTS, and ANDRETTI in a conflict of interest vis-à-vis the American lenders.   (Notably, Tilton had warned them several times to not take compensation for any fundraising services performed for Gallant as they were not licensed securities brokers.)

62.    Upon information and belief, Gallant expended significant sponsorship dollars on the ANDRETTI MOTORSPORTS race team—approximately $9,000,000 (USD) over three years (2021-2024).

63.    Upon information and belief, a portion of these funds were distributed to ANDRETTI MOTORSPORTS directly from the First Merchants Account, which had been established by Tyler Smith to save wiring fees from the direct transfers to the American lenders.

64.    In 2021, Four Sides, LLC, a company co-owned by Tyler Smith, JARETT ANDRETTI, Nancy Andretti, and TILTON, became an owner of Gallant holding a 10% interest in the company – and further creating a conflict of interest.

65.    The deal was put together by TYLER SMITH and JARETT ANDRETTI; TILTON was unaware of Four Sides' ownership interest in Gallant until early 2024.

66.    During this time, Gallant also began advertising that it was "Powered by Andretti Autosport.[4]"  Gallant used the Andretti name to lend legitimacy to its business dealings.

---

[3]    The "consulting fees" were apparently used in lieu of paying them a "commission," to which they were not entitled under either state or Federal law as they were not licensed to sell securities.

[4]    Andretti Autosport and Andretti Motorsports are two separate companies.  Andretti Autosport is associated with famous racing driver Mario Andretti.  In contrast, Andretti Motorsports is associated with Mario's great-nephew Jarett.  There are no allegations that Andretti Autosport was involved with Gallant in any way.  But Gallant used the more famous name to lure people in.

**Gallant Stops Making Interest Payments**

67.    In July of 2024, TILTON's financial advisor informed him that no interest payments had been received from Gallant since April of 2024, three months prior.  Unbeknownst to TILTON and the other American investors, Gallant had stopped making payments since at least March 31, 2024.

68.    At that time, TILTON contacted Tyler Smith to inquire about the missed payments and was informed by Smith that Gallant's account at Barclay's had been frozen to ensure no money laundering was occurring.  When TILTON inquired further, Smith advised the freeze was routine and that it should be quickly resolved. Smith assured Tilton that each Gallant lender would retroactively receive all interest payments due.

69.    TILTON further contacted Mr. Bithel, who advised TILTON that he could not view the account due to the freeze.  Mr. Bithel further stated there should be $6,000,000 in the frozen account and that another $19,000,000 was owed to Gallant from Travelodge; however, that amount could not be transferred into the Barclays account until it was unfrozen.

70.    From that point forward, neither TILTON nor any of the other American lenders received any additional information about (or payment from) the Barclays account.

71.    Nor did the American lenders receive any further payments from the First Merchants Account, after April 2024.

**Gallant Files for Bankruptcy Protection in the U.K**.

72.    In October 2024, without prior notice to its American lenders, Gallant filed for bankruptcy protection with the Courts of the United Kingdom.

73.     In December 2024, the American lenders were informed that Gallant had filed for a "Notice of Appointment" as part of its bankruptcy case in order to preserve the company, its remaining funds and the Travelodge contract.

74.     Corporate Financial Solutions was assigned pursuant to Gallant's Notice of Appointment and Andrew Cordon was named as the representative taking control of Gallant. (This would be the U.S. equivalent of a bankruptcy trustee under Federal law).  Mr. Cordon has asked for all the loan agreements but stated that it would require weeks, at minimum, of investigation before he had answers for Gallant's lenders.

75.     In the meantime, there is no further information that has been put forward by either Gallant or by JARETT ANDRETTI or anyone else at ANDRETTI MOTORSPORTS, including Tyler Smith.

76.     Indeed, when TILTON called JARETT ANDRETTI in November 2024 to inquire about the funds that had been loaned to Gallant, he was told that he would be personally sued if he took any formal action to collect the missing funds.

77.     From the initial inquiries made by DAVID TILTON and others as well as the facts learned to date,[5] it is logical, if not likely, that millions of dollars that were loaned by the American investors were either lost, stolen or misused by the defendants.

78.     In any case, there has been no accounting for what happened to these funds or whether they were diverted to another project, i.e. ANDRETTI MOTORSPORTS.

79.     In addition, it is undisputed that the actions of Defendants JARETT ANDRETTI and Tyler Smith, on behalf of ANDRETTI MOTORSPORTS, created unacceptable conflicts of

---

[5]     Additionally, upon information and belief, Gallant paid ANDRETTI MOTORSPORTS a large sum of money just prior to Gallant's accounts being frozen.

interest, as they became both solicitors of funding for Gallant, while also becoming beneficiaries of the same funding.  Finally, it is apparent that they did not register with the Virginia State Corporation Commission, nor any similar regulatory authority, despite taking on the role of securities brokers in their dealings on behalf of Gallant.

80.     The sum total of their actions is that millions of dollars have gone missing or remain unaccounted for.  This action seeks to remedy that.

## COUNT I
### (Accounting)

81.     The preceding paragraphs are re-alleged and incorporated by reference.

82.     Defendants JARETT ANDRETTI and ANDRETTI MOTORSPORTS, through its President, Tyler Smith, took the money of the American lenders and held it in an account at First Merchant's Bank to which they had sole access.

83.     Approximately $17 million was lent to Gallant by the American lenders, most of whom are plaintiffs in this case.  Defendants received and utilized a significant amount of the money ostensibly loaned to Gallant.

84.     Defendants made payments to the American lenders *inter alia* from a domestic account they opened at First Merchant's Bank.

85.      Defendants also received payments to themselves and their racing team out of that same account at First Merchant's Bank, which was ostensibly opened to hold the funds of the American lenders.

86.     Plaintiffs have a right to an accounting of the First Merchant's Bank account, as well as for all funds they loaned to Gallant, which came into the possession of the Defendants, whether through the account at First Merchant's or otherwise.

## COUNT II
### (Unregistered Sale of Securities Under VA Code § 13.1-522)

87.    The preceding paragraphs are re-alleged and incorporated by reference.

88.    Defendants JARETT ANDRETTI and ANDRETTI MOTORSPORTS took money from the American lenders and issued evidence of debt to be paid on a fixed schedule at a fixed rate.   This instrument qualifies as a marketing and selling a "security" under Va. Code § 13.1-501 of the Virginia Stock Corporations Act.

89.    In fact, the creation of an investment structure and taking money from investors in the general public is *de facto* the selling of securities.

90.    Defendants were not licensed to sell securities with any applicable authority.

91.    Defendants were paid for the marketing and selling of debt interest in a company, i.e. Gallant, which sales and marketing campaign took place within Virginia and was specifically targeted at Virginia residents.

92.    Plaintiffs were damaged by the illegal actions of Defendants herein.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiffs pray this Honorable Court enter a judgment against Defendants in favor of Plaintiffs, and

i)    in an amount to be determined at trial, but which is not less than $17,000,000, plus any additional damages that may accrue through the date of judgment;

ii)    attorney fees, costs and statutory penalties, as permitted under Title 13.1 of the Virginia Stock Corporations Act;

iii)    pre- and post judgement interest at the statutory rate until the judgment is satisfied; and

iv) awarding such other and further relief as this Court should deem just and proper.

**JURY TRIAL DEMANDED ON ALL COUNTS SO TRIABLE**.

Respectfully submitted,

DAVID TILTON,
By Counsel.

J. Chapman Petersen, Esq., VSB# 37225
Dylan Phillips, Esq, VSB# 97163
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, VA 22030
Telephone 571-459-2512
Facsimile 571-459-2307
jcp@petersenfirm.com
dmp@petersenfirm.com
*Counsel for Plaintiffs*

13